UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **DOCKET NO. 2:19-cr-00283** |
| **VERSUS** | **:** | **JUDGE JAMES D. CAIN, JR.** |
| **MORGAN LYONS** | **:** | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is the original Motion to Suppress and a First Amended Motion to Suppress filed by defendant Morgan Lyons ("Lyons") on April 30 and December 18, 2020, respectively. Docs. 47 and 68. The government opposes the motion. Docs. 56 and 69. Based on our review of the memoranda filed by the parties and oral arguments advanced at the hearing on the originally filed motion to suppress, we **RECOMMEND** that the motion be **DENIED**.

**I.**
**BACKGROUND**

The defendant in this matter was indicted for possession with intent to distribute marijuana and cocaine, as well as two counts of felon in possession of a firearm. Doc. 1, pp. 1-3. The indictment alleges that on or about May 5, 2016, Lyons knowingly and intentionally possessed with intent to distribute a mixture or substance containing five hundred grams or more of a mixture and substance containing a detectable amount of cocaine. *Id*., p. 1. Additionally, it alleges that Lyons possessed marijuana with the intent to distribute. *Id*., p. 2. Finally, it alleges that Lyons knowingly possessed two firearms having been convicted of a felony. *Id*., p. 2-3. Lyons claims that the contraband was obtained during an unconstitutional search of a private residence, 811 W.

Welsh Street, Welsh, Louisiana. Doc. 47, p. 1. The search occurred pursuant to a warrant signed by Judge Steve Gunnell of the 31st Judicial District, Parish of Jefferson Davis, Louisiana. Doc. 47, att. 1, p. 3. The warrant was based on the affidavit of Jason Chretien of the Jefferson Davis Parish Sherriff's Office. *Id*., p. 2.

On May 5, 2016, Jefferson Davis Parish deputies met with Louisiana State Police criminal investigators to investigate Morgan Lyons. Doc. 47, att. 3, p. 2. Officers learned from a confidential informant that a quantity of marijuana was to be delivered to Lyons at 811 West Welsh Street. *Id*. Deputies thereafter applied for and were granted a warrant to search Lyons' residence. *Id*. The affidavit provided as follows: on May 3, 2016, Jefferson Davis Parish deputies received information from a confidential informant identified as "495" that Lyons, in the past, received marijuana at 811 West Welsh Street where it would be "broken down" for distribution. *Id*., att. 1, p. 2. Agents intercepted a mail parcel through FedEx containing approximately 9 lbs. of marijuana. *Id*. Agents learned that the marijuana was to be delivered to Lyons at 811 West Welsh, which the affidavit classified as a "Stash House." *Id*. Agents used 495 to place a controlled telephone call to Elliot Clark III, whom the affidavit identifies as the "middle man or drug broker for Lyons." *Id*. Clark advised 495 that he was out of town but to bring the marijuana to 811 West Welsh Street "where he would be met by his associates (Lyons)." *Id*. The affidavit then stated that the agents would attempt a controlled delivery of the marijuana to 811 West Welsh Street, conduct surveillance, and observe which persons would arrive to take possession of the marijuana. *Id*., p. 3. Further, once the package was delivered, the agents would "continue surveillance" and would "secure the residence, vehicles and subjects involved" once the transaction took place. *Id*. Finally, the affidavit provided that "[f]or officer safety, the Louisiana State Police request a No Knock Search Warrant." *Id*. According to the government's opposition to the originally filed motion, the

district judge granted the anticipatory search warrant, determining that "probable cause to search the premises existed, conditioned upon the delivery of the marijuana to the 811 West Welsh Street residence." Doc. 56, p. 2.

The government's opposition contends that, during the controlled delivery, the officers conducted aerial surveillance of the transaction and were able to observe 495 enter the residence with the package and leave without it. *Id*., p. 3. Thereafter, the officers observed a black male leave the residence, enter a vehicle, and drive away. *Id*. Officers then stopped the vehicle, whereupon they discovered Lyons was the driver and sole occupant. *Id*. After 495 left the residence, the search warrant was executed at 811 West Welsh, during which officers found: (1) ammunition and the two stolen firearms identified in Counts 3 and 4 of the indictment; (2) the black duffel bag containing 9 lbs of marijuana that 495 had just delivered to Lyons; (3) a number of plastic bags containing white powder, which officers believed to be cocaine; (4) various drug paraphernalia that officers believed was used in the breaking down and packaging of cocaine for distribution; (5) approximately $36,000 in U.S. currency; (6) a notebook with drug transaction notes and names written in it; and (7) documents and a card belonging to Morgan Lyons. Doc. 47, att. 3, p. 3.

Lyons' original Motion to Suppress argued that the search of 811 West Welsh violated his constitutional rights because (1) there was no probable cause to search at the time the warrant was issued but only a hope that officers would later acquire probable cause; (2) the affidavit lacked information regarding several aspects of the officers' investigation of Lyons; and (3) the electronic process utilized for this particular warrant did not have sufficient safeguards to comply with the Fourteenth Amendment. *See generally* Doc. 47. The government in its opposition argues that (1) this was an "anticipatory" warrant which is permissible under established law; (2) the defendant failed to address whether the officers relied on the warrant in good faith, which is the threshold

issue when officers execute a search pursuant to a warrant; (3) the program used for this particular warrant complies with state and federal law. *See generally* Doc. 56. Lyons' response contends that the affidavit established neither "definite plans" nor "imminent delivery of marijuana" and therefore there was no probable cause to believe the transaction would occur, as required for an anticipatory warrant. Doc. 57, pp. 3-4.

On December 16, 2020, a hearing was conducted on Lyons' Motion to Suppress as originally filed. *See* Doc. 66. Defense counsel wanted to read an FBI report in open court but, rather than belabor the point and with the government having no objection, the court simply allowed him to introduce the report as an exhibit. Doc. 67, att. 1. We noted that Lyons' original motion failed to meet his burden of establishing that the "good faith" exception to the warrant requirement did not apply; thus, counsel was not entitled to argue the relevancy of the FBI report at the hearing. The court did, however, grant the defendant's request to file an amended motion to suppress addressing any additional issues counsel felt necessary. Doc. 66. Lyons thereafter filed a First Amended Motion to Suppress. Doc. 68.

In Lyons' First Amended Motion to Suppress, he argues that the government failed to meet the initial burden at the suppression hearing of establishing the existence of a valid warrant that complies with Louisiana Revised Statutes 9:2603.1.[1] *Id.*, att. 1, p. 1 n. 1. Regarding a lack of probable cause in the affidavit, defendant makes much of the same argument as he does in his original motion. *Id.*, pp. 2-5. He also argues that the FBI report materially conflicts with several details that were included in the warrant affidavit. *Id.*, p. 23. Lyons seeks an evidentiary hearing

---

[1] The electronic warrant must comply with the relevant state statute, which has specific requirements for warrants that are issued electronically. The warrant was obtained through an application called WarrantNow. Doc. 56, p. 10. The government attached to its Opposition to the original Motion the affidavit of Brian Johnson, the Director of Operations for WarrantNow, who provided a detailed overview of the process. Doc. 56, att. 1. We find this sufficient; the government need not have put on the same evidence at the suppression hearing.

-4-

on the amended motion but it is unclear on what grounds. The government contends that the affidavit supporting the warrant is presumed valid and Lyons bears the burden of establishing otherwise. Doc. 69, p. 3. Moreover, the government argues that Lyons has not demonstrated the need for an evidentiary hearing, which requires more than conclusory allegations that the affidavit was deliberately false or made in reckless disregard for the truth. *Id*. We approach the original motion and amended motion separately below.

## II.
## LAW & ANALYSIS

The Fourth Amendment protects an individual's right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; *see also Wolf v. Colorado*, 338 U.S. 25, 27 (1949) (first incorporating this protection to the states through the Due Process Clause of the Fourteenth Amendment). The remedy for evidence seized by law enforcement in violation of the Fourth Amendment is the exclusion of the unconstitutionally seized evidence at trial. *Weeks v. United States*, 232 U.S. 383, 391–92 (1914); *Mapp v. Ohio*, 367 U.S. 643, 654–655 (incorporating exclusion for Fourth Amendment violations to the states). This exclusionary remedy is not a personal constitutional right, but a remedy aimed at preventing police misconduct. *See United States v. Leon*, 468 U.S. 897, 906–907 (1984) (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974) ("The rule thus operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'")). The burden generally rests on the defendant to show, by a preponderance of the evidence, that the material in question was seized in violation of his constitutional rights. *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993).

Where the challenge involves a search supported by a warrant, the inquiry begins with whether officers can claim shelter under their good faith reliance on that warrant, using factors set out in *Leon*. 468 U.S. at 922–23; *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). The defendant bears the initial burden of showing the good-faith exception does not apply. *United States v. Jarman*, 847 F.3d 259, 264 (5th Cir. 2017). If the good-faith exception applies, the court will not explore the validity or sufficiency of the warrant unless the case involves a "novel question of law" within Fourth Amendment jurisprudence. *Satterwhite*, 980 F.2d at 320.  Finding no novel questions of law, we therefore consider the challenge to good-faith reliance first and only address the defendant's specific challenges to the warrant if we reject the government's claim of good faith reliance.

The good-faith inquiry is generally one of "whether a reasonably well-trained officer would have known the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23. In *Leon*, the Court outlined four scenarios where the good-faith exception does not apply:

> (1) when the issuing magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false; (2) when the issuing magistrate wholly abandoned his judicial role; (3) when the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable; and (4) when the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid.

*U.S. v. Woerner*, 709 F.3d 527, 533–34 (5th Cir. 2013). When a warrant affidavit is so lacking in indicia of probable cause such that the executing officers' reliance on it was unreasonable, it is known as a "bare bones" affidavit. *United States v. Craig*, 861 F.3d 818, 821 (5th Cir. 1988). The Fifth Circuit has defined a bare bones affidavit as one containing "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Satterwhite,* 980 F.2d at 321.  A party challenging the good-faith exception on

the ground that the affiant misled the magistrate must establish "that material misstatements or omissions are contained in the supporting affidavit and that if those statements were excised (or the omitted information included), the affidavit would be insufficient to support the warrant." *United States v. Beverly*, 943 F. 3d 225, 237 (5th Cir. 2019) (quoting *United States v. Signoretto*, 535 F. App'x 336, 339 (5th Cir. 2013)). Additionally, to be entitled to a suppression hearing on the issue of an allegedly false or misleading affidavit, the moving party must demonstrate that (1) the allegations in the affidavit were either deliberately false or made in reckless disregard for the truth; and (2) the remaining portion of the affidavit is insufficient to support a finding of probable cause. *United States v. Dickey*, 102 F.3d 157, 161-62 (5th Cir. 1996) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Moreover, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine," with the challenger's allegations properly accompanied by an offer of proof. *Franks*, 438 U.S. at 171.

### A. Defendant's Original Motion to Suppress

Defendant's original motion fails to address any of the *Leon* factors. There is no claim that the affiant (1) provided misleading information to the magistrate; (2) that the magistrate wholly abandoned his judicial role; (3) or that the affidavit was facially deficient in that it lacked particularity. *Woerner*, 709 F.3d at 533–34. Additionally, Lyons never argues the affidavit was a "bare bones" affidavit such that the officers could not have reasonably relied on the resulting warrant. *Id*. At best, he claims that the magistrate had "no facts" on which to judge the reliability of 495's statements. Doc. 47, p. 2, ¶ 5. The affidavit, however, states that 495 "has provided information in the past that has led to the seizure of drugs and currency from illicit transactions." *Id*., att. 1, p. 2. Moreover, the affidavit proffered other information, such as Lyons' criminal history, the substance of the controlled call that officers had 495 place to Lyons' co-conspirator,

and the officers' belief that the residence was a "Stash House." *Id*., pp. 2-3. Thus, the statements set forth in the affidavit are far from "conclusory;" rather, they provide information from which the judge could independently determine probable cause. We find that Lyons failed to carry his burden of establishing the good-faith exception does not apply in his original motion.

### B. Defendant's First Amended Motion to Suppress

We find that defendant's amended motion similarly fails to show that the good faith exception does not apply. Lyons' motion contends that certain facts in the affidavit were "likely false." Doc. 68, att. 1, p. 23. He claims the following discrepancies in fact between the FBI report and affidavit: (1) while the affidavit says that Jefferson Davis deputies and Louisiana State Police utilized the confidential informant and "intercepted" the package of marijuana, the FBI report claims that the intercepting police agency was actually the Calcasieu Parish Sheriff's office and that 495 reached out to them first to inform them about the package; (2) while the affidavit says the package was 9 pounds of marijuana, the FBI report says 10 pounds; (3) the exact date that 495 informed agents of the package of marijuana and the date the package was supposed to be delivered to 495's house are 1-2 days off in the FBI report; (4) the affidavit claims the package "was to be delivered" to Lyons, while the FBI report says that the package was supposed to be delivered to 495. *Compare* Doc. 67, att. 1, pp. 1-2 with att. 2, pp. 1-2. Lyons also contends there are discrepancies between the affidavit and the facts as stated in the government's briefs. Doc. 68, att. 1, pp. 23-25. The government responds that nowhere in Lyons' motion does he argue the materiality of the inconsistent statements. Doc. 69, p. 10. Moreover, the government argues that Lyons is not entitled to another hearing because he fails to "make a substantial preliminary showing that there are materially false statements or omissions." *Id*.

If Lyons wished to contend that the affidavit contains false statements that were proffered either intentionally false or with reckless disregard for the truth, then he must have done so in the manner mandated by *Franks*. 438 U.S. at 171. Nowhere does Lyons allege the affiant intentionally misled the issuing magistrate. Moreover, other than pointing out differences between the affidavit, the FBI report, and the government's pleadings, defendant makes no offer of proof that the statements contained in the affidavit were false. Rather, he only offers speculation that cross-examining the agent and the confidential informant will reveal such falsities in the affidavit. Lyons merely highlights the discrepancies between the documents and then claims, as a result, that the affiant's claims were "likely false" and the affiant "seems to have falsely" sworn to those facts. Doc. 68, att. 1, p. 23, 25.

Because Lyons did not state with specificity each statement he claims to be false and what evidence he has to support that contention (such as a sworn or otherwise reliable statement of witnesses, or a satisfactory explanation of the absence of the same) then he is not entitled to an evidentiary hearing. *Franks*, 438 U.S. at 171. Conjecture that he might be able to elicit such evidence through examination of a witness will not suffice.

### III.
#### CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the defendant's Motion to Suppress [doc. 47] and First Amended Motion to Suppress [doc. 68] be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 59(b) of the Federal Rules of Criminal Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking

either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1)), *as recognized in Cruz v. Rodriguez*, 828 F. App'x 224, (5th Cir. 2020) (unpubl.)

    THUS DONE AND SIGNED in Chambers this 17th day of February, 2021.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE